PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| EHPLABS RESEARCH, LLC, | ) | |
| | ) | CASE NO.  5:22CV0653 |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| MICHAEL SMITH, *et al.*, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | [Resolving ECF Nos. 18 and 22] |

Pending is Defendants Revive MD Supplement Company, LLC ("Revive MD"), Raw

Nutrition Supplement Company, LLC ("Raw Nutrition"), and Domenic Iacovone's Motion to

Dismiss Plaintiff's Complaint (ECF No. 18).  Also pending is Plaintiff EHPLabs Research LLC's

Motion to Dismiss Counterclaims of Defendant Michael Smith (ECF No. 22).  The Court has

been advised, having reviewed the record, the parties' briefs and the applicable law.  The Court

has also considered the statements of counsel offered at the August 1, 2022 Telephonic Case

Management Conference.  For the reasons set forth in Section III below, ECF No. 18 is denied.

For the reasons set forth in Section IV below, ECF No. 22 is granted.

**I.  Background**

**A.**

Plaintiff is a Delaware limited liability company, whose sole member is a citizen of

Australia.  It filed a two-count Complaint (ECF No. 2) in the above-entitled action that invokes

the Court's diversity jurisdiction.  Plaintiff alleges that Defendant Michael "Merkel" Smith

(5:22CV0653)

breached the non-compete provision of his sponsorship agreement with EHPLabs when he

entered into a similar arrangement with Revive MD and Raw Nutrition, two direct competitors of

EHPLabs, and began promoting their products.  Count One is for breach of contract against

Smith.  Count Two is for tortious interference with a contractual relationship against Revive MD,

Raw Nutrition, and Iacovone (the "Raw Defendants"), all of whom are residents of Florida.

Iacovone is an owner of ReviveMD and Raw Nutrition.  Iacovone has been to Ohio on only one

occasion, approximately five (5) years ago for a basketball game.[1]

Plaintiff is a "leader" in the health and fitness supplement industry.  ECF No. 2 at PageID

#: 91, ¶ 2.  Both Revive MD and Raw Nutrition sell directly competitive products.  Smith, a body

builder and certified personal trainer from Akron, Ohio, is a high-profile fitness industry athlete

and one of Plaintiff's brand ambassadors.  In September 2018, Plaintiff and Smith entered into an

Athlete Agreement (ECF No. 1-1) in which Smith agreed to promote Plaintiff's products (*e.g.*,

OxyShred Thermogenic Fat Burner) in various settings, including but not limited to on social

media.  In return, Plaintiff agreed to pay Smith a monthly base retainer, plus a revenue share

based on total monthly sales on Plaintiff's website directly attributable to the coupon code

created for and allocated to Smith for use in his promotional activities.  Smith's Athlete

Agreement with Plaintiff, renewed in July 2021, contains non-competition provisions that he

cannot promote the products of any competitor of Plaintiff.  *See* ECF No. 1-7 at PageID #: 40,

§ 4.1(a) ("The Athlete must not promote, market or endorse any business that is the same or

---

[1]  ECF Nos. 18 and 18-1 refer to "EXHIBIT A," which has not been filed on the docket.

2

(5:22CV0653)

similar to the business of EHPlabs, including businesses in connection with nutritional supplements (including manufacturer, wholesale or retail), pharmaceuticals or nutraceuticals during the Term and for a period that is 12 months after the End Date or termination of this agreement.").  The Agreements are governed by Ohio law.  *See, e.g.*, ECF No. 1-7 at PageID #: 43, § 9.1 ("This agreement is governed by and must be construed according to the law applying in the state and country of residence of the Athlete.").

On or about January 20, 2022, Smith approached Plaintiff and asked whether EHPLabs would permit him to promote products for Revive MD.  Plaintiff informed Smith that Revive MD was a competitor of EHPLabs and that Smith, therefore, could not promote Revive MD's products given the terms of his Agreement.  Nevertheless, on or about February 14, 2022, Smith first announced on his Instagram page that he had entered into a partnership with Revive MD (which Iacovone allegedly co-founded) and Raw Nutrition (which Iacovone allegedly co-founded with Chris Bumstead).  *See* ECF No. 1-4.  Since then, Smith has ceased promoting Plaintiff's products entirely even though his Athlete Agreement, in effect through July 2023, has allegedly not been terminated by Plaintiff.  Instead, Smith has repeatedly posted on Instagram reviews touting the products of Revive MD and Raw Nutrition in spite of Plaintiff's cease and desist letters sent in March 2022 to Revive MD, Raw Nutrition, Iacovone, and Bumstead.  *See* ECF No. 1-7.  Pursuant to § 4.1(b)(iii) of the Athlete Agreement, Smith agreed that, in the event that he breaches his non-compete restrictions, Plaintiff is entitled to liquidated damages equal to ten (10) times the annual value of the Athlete Agreement to the athlete, in addition to any other remedy available to Plaintiff at law or under contract.  *See* ECF No. 1-7 at PageID #: 41.

3

(5:22CV0653)

According to Smith – which Plaintiff denies – in January 2022, he was advised by his manager at EHPLabs that, as a result of a change in ownership of EHPLabs, the renewed July 2021 Athlete Agreement had been terminated and Smith needed to sign another agreement by February 2022 with substantially different terms more favorable to Plaintiff.  *See* Answer (ECF No. 19) at PageID #: 207, ¶ 91.  After reviewing the terms of the proposed new agreement, Smith decided that he did not want to sign it.  Smith also alleges that Plaintiff subsequently approved of his partnership with Revive MD.  He admits that Raw Nutrition is a competitor of Plaintiff, but denies that Revive MD is a competitor of EHPLabs.

Smith has also filed a three-count Counterclaim (ECF No. 19) against Plaintiff.  Count One is for declaratory judgment.  Smith seeks a declaratory judgment regarding the parties' "rights, duties, obligations, and other legal relations" in light of his allegation that Plaintiff informed him that the Agreement had expired.  In Count Two for estoppel, Smith asserts that EHPLabs is estopped from enforcing the Athlete Agreement in light of its alleged misrepresentations of fact to him.  Count Three is for breach of unspecified provisions of the contract.

**B.**

As stated on the web page of the undersigned and in the Telephonic Case Management Conference Scheduling Order (ECF No. 20 at PageID #: 222), the Court requires a party to submit a written request to be dismissed to opposing counsel before a defendant may file a motion to dismiss.  Opposing counsel shall either agree to the request for dismissal or shall give explicit reasons in writing for refusing to do so.  Upon such refusal, the party shall reassess its

(5:22CV0653)

position and may file a motion to dismiss if the party believes it is still entitled to dismissal.  The

motion to dismiss must be accompanied by a statement certifying that this exchange has

occurred.  The within motions, however, do not set forth a statement certifying that the pre-filing

written exchange occurred.

## II.  Standard of Review

### A.       Motion to Dismiss Under Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must take

all well-pleaded allegations in the complaint as true and construe those allegations in a light most

favorable to the plaintiff.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).  A

cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility

in th[e] complaint."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 564 (2007).  A pleading must

contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

*Ashcroft v. Iqbal* , 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  Plaintiff is not

required to include detailed factual allegations, but must provide more than "an unadorned,

the-defendant-unlawfully-harmed-me accusation."  *Id.* at 678.  A pleading that merely offers

"labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not

do."  *Twombly*, 550 U.S. at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]"

devoid of "further factual enhancement."  *Id.* at 557.  It must contain sufficient factual matter,

accepted as true, to "state a claim to relief that is plausible on its face."  *Id.* at 570.  "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at

5

(5:22CV0653)

678.  The plausibility standard is not akin to a "probability requirement," but it suggests more

than a sheer possibility that a defendant has acted unlawfully.  *Twombly*, 550 U.S. at 556.  When

a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short

of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.* at 557 (brackets

omitted).  "[When] the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader

is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)).  The Court "need not accept

as true a legal conclusion couched as a factual allegation or an unwarranted factual inference."

*Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012) (citations and internal

quotation marks omitted).

On a motion made under Rule 12(b)(6), the Court's inquiry is generally limited to the

content of the complaint, "although matters of public record, orders, items appearing in the

record of the case, and exhibits attached to the complaint may also be taken into account without

converting the motion to one for summary judgment."  *Ira Svendsgaard and Assoc., Inc. v.

Allfasteners USA, LLC*, No. 1:20CV0328, 2021 WL 4502798, at *3 (N.D. Ohio Oct. 1, 2021)

(Nugent, J.) (ECF No. 106-2) (citing *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016)).

**B.     Motion to Dismiss Under Rule 12(b)(2)**

In the context of a Rule 12(b)(2) motion, the burden of establishing personal jurisdiction

is on the plaintiff.  *Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir. 1980) (citing *Weller v. Cromwell

Oil Co.*, 504 F.2d 927 (6th Cir. 1974)).  "[I]n the face of a properly supported motion for

dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set

6

(5:22CV0653)

forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Weller*, 504 F.2d at 930).  "[When] . . . the district court relies solely on written submissions and affidavits to resolve a Rule 12(b)(2) motion, rather than resolving the motion after either an evidentiary hearing or limited discovery, the burden on the plaintiff is 'relatively slight,' and 'the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal.' " *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988); *Theunissen*, 935 F.2d at 1458).  In that instance, the court views the pleadings and affidavits submitted in a light most favorable to the plaintiff, and the court "should not weigh 'the controverting assertions of the party seeking dismissal.' " *Id.* (quoting *Theunissen*, 935 at 1459).

### III. The Raw Defendants Motion to Dismiss (ECF No. 18)

The Raw Defendants move the Court to dismiss the Complaint (ECF No. 2).  They argue under Rule 12(b)(2) that Plaintiff has absolutely no factual basis to assert the Court's personal jurisdiction over Iacovone, much less state a claim for tortious interference with a contractual relationship against any of them under Rule 12(b)(6).

### A.

### 1.

The Raw Defendants argue that Plaintiff has failed to establish personal jurisdiction over Iacovone.  They contend the "fiduciary shield doctrine" precludes the Court from exercising personal jurisdiction over him.  *See* Memorandum in Support (ECF No. 18-1) at PageID #: 189.

7

(5:22CV0653)

In general, this doctrine "prevents individual officers of a corporation from being subject to personal jurisdiction in the forum state merely because the corporation is subject to such jurisdiction," although the doctrine "is not absolute." *Commodigy OG Vegas Holdings LLC v. ADM Labs*, 417 F. Supp.3d 912, 924 (N.D. Ohio 2019) (citing *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 698 (6th Cir. 2000) (holding "the mere fact that the actions connecting defendants to the state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those defendants")).  The fiduciary shield doctrine, however, does not apply in the case at bar because EHPLabs alleges that Iacovone was personally involved in the tortious conduct at issue.  *See, e.g.*, ECF No. 2 at PageID #: 104, ¶ 79 ("Notwithstanding their knowledge that Smith was under contract with [EHPLabs] and was subject to a non-compete provision, Raw Nutrition, Revive MD, and Iacovone intentionally caused Smith to breach the Athlete Agreement by inducing him to enter into promotional agreements with Raw Nutrition and Revive MD, two direct competitors of EHP."); ¶ 80 ("Raw Nutrition, Revive MD, and Iacovone intentionally caused Smith to breach the Athlete Agreement by inducing him to promote products of Raw Nutrition and Revive MD that are directly competitive with EHP's own products, including through numerous posts on Smith's social media pages.").  *Commodigy*, 417 F. Supp.3d at 924 (holding that individual defendants were subject to personal jurisdiction when they negotiated business agreements with plaintiff and thus availed themselves of the laws of Ohio).

The Court concludes it has personal jurisdiction over Iacovone because Plaintiff has adequately alleged that Iacovone committed a tort within the state of Ohio.  *See Dugger v.*

8

(5:22CV0653)

*Honeywell Int'l, Inc.*, No. 1:21CV0892, 2021 WL 5961624, at *6 (N.D. Ohio Dec. 16, 2021)

(holding that individual defendant could not rely on fiduciary shield doctrine when plaintiff "has

alleged that [the individual defendant] was significantly involved in the conduct giving rise to the

claims at issue in this litigation").

**2.**

The Raw Defendants do not address in detail the requirements of either Ohio's long-arm

statute, Ohio Revised Code § 2307.382, or the Due Process Clause of the Fourteenth

Amendment.  *See* ECF No. 18-1 at PageID #: 188; Reply Memorandum (ECF No. 34) at PageID

#: 316.  Because it is unclear whether Ohio's long-arm statute is coterminous with federal

constitutional limits,[2] the Court presumes that, to establish a *prima facie* case of personal

jurisdiction in this diversity case, Plaintiff must demonstrate that (1) Ohio's long-arm statute has

been satisfied and (2) exercising jurisdiction would comport with Due Process.  *Schneider v.*

*Hardesty*, 669 F.3d 693, 699 (6th Cir. 2012).  The Sixth Circuit has determined that "Ohio law

does not appear to recognize general jurisdiction over non-resident defendants, but instead

requires that the court find specific jurisdiction under one of the bases of jurisdiction listed in

Ohio's long-arm statute."  *Conn v. Zakharov*, 667 F.3d 705, 717 (6th Cir. 2012); *see also*

*Commodigy*, 417 F. Supp.3d at 920.  Plaintiff asserts specific personal jurisdiction against

---

[2]  Ohio amended the state long-arm statute, effective in April 2021, with subsection (C) now providing:  "In addition to a court's exercise of personal jurisdiction under division (A) of this section, a court may exercise personal jurisdiction over a person on any basis consistent with the Ohio Constitution and the United States Constitution."  § 2307.382(C).  *See QFS Transportation, LLC v. Huguely*, No. 1:21-cv-00769, 2022 WL 1719674, at *4-5 (S.D. Ohio May 27, 2022) (discussing implications of the recent changes to the text of the long-arm statute).

(5:22CV0653)

Iacovone based on one of the nine circumstances enumerated in § 2307.382(A).  According to

EHPLabs, the Court can exercise personal jurisdiction over Iacovone for "[c]ausing tortious

injury by an act or omission in this state[.]"  Ohio Rev. Code § 2307.382(A)(3).

      Plaintiff has established a *prima facie* showing of personal jurisdiction under subsection

(A)(3) of Ohio's long-arm statute.  As stated above, Plaintiff alleges that Iacovone was

personally involved in causing Revive MD and Raw Nutrition to enter into agreements with

Smith – an Ohio resident – notwithstanding his existing obligations to EHPLabs.  By allegedly

inducing Smith to breach his Athlete Agreement while in Ohio, Iacovone has "caused tortious

injury" by "an act or omission" within Ohio.  *See Ocean Innovations, Inc. v. Quarterberth, Inc.*,

No. 1:03CV0913, 2009 WL 10689365, at *6 (N.D. Ohio March 31, 2009) (holding that

jurisdiction was proper under subsection (A)(3) of Ohio's long-arm statute when defendants sent

infringing offers to sell to Ohio and thus caused tortious injury by an act or omission within

Ohio); *Javitch v. Neuma, Inc.*, No. 3:04CV1487, 2006 WL 240580, at *3 (N.D. Ohio Jan. 31,

2006) (viewing the allegations in the light most favorable to plaintiff, jurisdiction was proper

under Ohio's long-arm statute even though defendants were never physically present in Ohio

because act of sending documents to Ohio containing misrepresentations and omissions

constituted commission of a tort under § 2307.382(A)(3)).

      A federal court sitting in diversity may exercise jurisdiction so long as it is compatible

with the due process requirements of the United States Constitution.  *Int'l Techs. Consultants,*

*Inc. v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997) (citation omitted).  The overriding

question is whether Iacovone "possesses such minimum contacts with [Ohio] that the exercise of

10

(5:22CV0653)

jurisdiction would comport with traditional notions of fair play and substantial justice." *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 505 (6th Cir. 2014) (quoting *Theunissen*, 935 F.2d at 1459).  Courts generally consider three prongs in answering that question:  (1) whether the defendant purposefully availed himself of the privilege of doing business in Ohio; (2) whether the activities in Ohio proximately caused the plaintiff's injuries; and (3) whether the consequences caused by the defendant's actions were sufficiently connected to Ohio to make its courts' jurisdiction reasonable.  *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 503 (6th Cir. 2020) (citing *Beydoun*, 768 F.3d at 507-508).

        The Court finds that the three specific personal jurisdiction prongs have been met.  First, Iacovone purposefully availed himself of the privilege in acting in Ohio when he allegedly personally participated in causing Smith – an Ohio resident – to breach his contract with Plaintiff.  *See Ocean Innovations*, 2009 WL 10689365, at *7 (holding that jurisdiction was proper under federal due process over defendants who sent infringing offers to sell to Ohio); *Javitch*, 2006 WL 2400580, at *4 (defendants personally availed themselves of doing business in Ohio by sending documents that were the "catalyst" of the alleged tortious activity).  That is true regardless of whether Iacovone set foot in Ohio, as "[j]urisdiction . . . may not be avoided merely because the defendant did not *physically* enter the forum State."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (emphasis in original).  Second, there is no dispute that those contacts are directly related to the operative facts alleged in the Complaint (ECF No. 2). Finally, Iacovone's actions in allegedly causing Smith to breach a contract governed by Ohio law

11

(5:22CV0653)

is sufficiently connected to Ohio to make the exercise of jurisdiction reasonable.  *See Javitch, 2006 WL 2400580, at *5-6.*

The Court concludes the alleged facts are sufficient to prove that Iacovone is subject to specific jurisdiction under Ohio's long-arm statute, Ohio Revised Code § 2307.382, and comports with the Due Process Clause of the United States Constitution.

**B.**

Next, the Raw Defendants contend Plaintiff has failed to state a claim of tortious interference.  The claim for tortious interference with a contractual relationship requires proof of the following elements:  "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages."  *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171, 176 (1999).  " 'Intentional procurement' refers to conduct that causes the third party to breach the contract, or that leaves the third party with no choice but to breach the contract."  *Union of Needletrades, Indus. and Textile Emps. AFL-CIO v. Am. Capital Strategies, Ltd.*, 546 F. Supp.2d 546, 560-61 (S.D. Ohio 2008).  To satisfy the intentional procurement prong, the plaintiff must show that "the actor . . . want[ed] the breach of contract, or [knew] that a breach of contract [was] substantially certain to result from the interference."  *Id.* at 561.  According to the Raw Defendants, Plaintiff failed to allege that:  (1) Iacovone was actively and personally involved in the allegedly tortious conduct; (2) they had knowledge of the confidential non-compete clause; and, (3) the Athlete Agreement and its non-compete clause are valid and enforceable.

12

(5:22CV0653)

**1.**

"Specific direction or sanction of, or active participation or cooperation in, a positively wrongful act of commission or omission which operates to the injury or prejudice of the complaining party is necessary to generate individual liability in damages of an officer or agent of a corporation for the tort of the corporation." *Dorricott v. Fairhill Center for Aging*, 2 F. Supp.2d 982, 990 n.7 (N.D. Ohio 1998) (citations omitted).  Plaintiff asserts that Iacovone was actively and personally involved in the allegedly tortious interference of Revive MD and Raw Nutrition.  EHPLabs specifically alleges that Iacovone was aware that Smith had an exclusive agreement with Plaintiff, intentionally caused Smith to breach that arrangement, induced him to promote the products of Revive MD and Raw Nutrition, and that Smith made social media posts promoting Revive MD and Raw Nutrition with Iacovone's full knowledge and support.  *See* ECF No. 2 at PageID #: 100, ¶ 50; 103-104, ¶¶ 73-80.  Therefore, the Court concludes that Plaintiff has adequately pled Iacovone's personal participation in the alleged tortious conduct at issue.

**2.**

Plaintiff adequately pleads the Raw Defendants had knowledge of the confidential non-compete clause.  *See* ECF No. 2 at PageID #: 103-104, ¶¶ 73, 75-77, and 79; *Spartan Chem. Co. v. Nat'l Chem. Labs of PA, Inc.*, No. 3:17CV2487, 2018 WL 6169378, at *4 (N.D. Ohio Nov. 26, 2018) (holding that plaintiff adequately pled tortious interference claim when it "identifie[d] a specific contractual and business relationship with a specific group of people"). The Raw Defendants do not deny that they knew Smith had a contractual agreement with Plaintiff.  Instead, they argue that EHPLabs has not adequately pled that the Raw Defendants

13

(5:22CV0653)

knew the Agreement was exclusive. *See* ECF No. 18-1 at PageID #: 191-92. The Raw

Defendants cite *Crown Equip. Corp. v. Toyota Material Handling, U.S.A., Inc.*, 202 Fed.Appx.

108 (6th Cir. 2006), in support of their argument. *Crown*, however, was a summary judgment

case, not a ruling on a motion to dismiss. *Id.* at 109, 112. What the Raw Defendants knew about

Smith's exclusive contractual relationship with EHPLabs is a question of fact better reserved for

trial or upon a summary judgment motion. *B.L. v. Schuhmann*, 380 F. Supp.3d 614, 643, 644-45

(W.D. Ky. 2019) (denying motions to dismiss).

**3.**

The Raw Defendants do not dispute that the Complaint alleges that "[t]he Athlete

Agreement is a valid and enforceable contract." ECF No. 2 at PageID #: 101, ¶ 62. Nor do they

affirmatively argue that the Agreement or the non-compete provision is unenforceable. Instead,

they argue that Plaintiff "offers no factual averments" to establish that the Agreement is valid

and enforceable. The Raw Defendants cite *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.*, 86

Ohio St.3d 270, 274-75 (1999), and *Levine v. Beckman*, 48 Ohio App.3d 24, 27-28 (1988), in

support of their argument that non-competition clauses must meet certain criteria for

reasonableness. *See* ECF No. 18-1 at PageID #: 193. These cases, however, were not decided at

the pleading stage. The issue in *Hamilton* arose after a jury trial, not on a motion to dismiss, and

the Supreme Court of Ohio said nothing about a plaintiff's pleading burden. In *Levine*, the

appellate court dealt with whether a plaintiff was entitled to injunctive relief to enforce a

non-compete clause following an evidentiary hearing, not what a plaintiff must plead in its

affirmative pleading.

14

(5:22CV0653)

Under modern federal pleading standards, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must "allege[ ] facts that 'state a claim to relief that is plausible on its face' and that, if accepted as true, are sufficient to 'raise a right to relief above the speculative level.' " *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555, 570). Taking Plaintiff's factual allegations as true and drawing all inferences in its favor, *Wesley v. Campbell*, 779 F.3d 421, 427 (6th Cir. 2015), EHPLabs' claim for tortious interference with a contractual relationship survives the Raw Defendants' Motion to Dismiss. Plaintiff is not required, at the pleading stage, to prove that the factual allegations in the Complaint (ECF No. 2) entitle it to relief. Discovery will bear out the facts but, at this early stage of the litigation, taking Plaintiff's allegations as true and making all reasonable inferences in EHPLabs' favor, the Court finds that it has plausibly alleged a claim for tortious interference with a contractual relationship against the Raw Defendants.

Therefore, Count Two of the Complaint (ECF No. 2) survives, and the Raw Defendants' Motion to Dismiss Plaintiff's Complaint (ECF No. 18) is denied.

### IV. Plaintiff's Motion to Dismiss (ECF No. 22)

Plaintiff moves the Court to dismiss the Counterclaims (ECF No. 19) of Smith. EHPLabs submits three reasons for why the counterclaims amount to little more than a denial of the allegations in the Complaint (ECF No. 2). First, the declaratory judgment claim seeks a declaration that the parties' Athlete Agreement is not in effect and that Smith did not breach it, questions that will already need to be decided in connection with Plaintiff's own claims. Courts

15

(5:22CV0653)

within the Sixth Circuit have repeatedly held that such "mirror image" declaratory judgment

claims serve no useful purpose, and therefore must be dismissed.  Second, Smith's estoppel

claim is not an affirmative cause of action.  Rather, Smith is pursuing a theory of equitable

estoppel, alleging that Plaintiff is estopped from enforcing the Athlete Agreement because

EHPLabs allegedly made misstatements of fact when it told Smith that the Agreement was no

longer in force.  According to Plaintiff, equitable estoppel is only a defense, not an affirmative

claim under settled law.  Third, the Court should dismiss Smith's breach of contract claim

because he has not identified any specific provision of the Athlete Agreement that Plaintiff

allegedly breached and has not asserted that he performed all of his obligations under the

Agreement, two essential elements for stating a claim under Ohio law.

### A.

Plaintiff argues Count One for declaratory judgment is duplicative of EHPLab's

affirmative claims, serves no useful purpose in light of Plaintiff's existing breach of contract

claim against Smith, and does not present new factual or legal issues.

"[W]hen a counterclaim merely restates the issues as a 'mirror image' to the complaint,

the counterclaim serves no purpose." *Fed. Deposit Ins. Co. v. Project Dev. Corp.*, No. 86-5490,

1987 WL 37488, at *3 (6th Cir. May 27, 1987).  "Dismissal for this reason [is] appropriate only

when it is 'clear that there is a complete identity of factual and legal issues between the

complaint and the counterclaim.' " *Endless River Technologies LLC v. Trans Union LLC*, No.

1:18CV0936, 2019 WL 13090252, at *3 (N.D. Ohio Aug. 14, 2019) (denying plaintiff's motion

to dismiss defendant's counterclaim for declaratory judgment) (quoting *Prettrey v. Enterprise*

16

(5:22CV0653)

*Title Agency, Inc.*, No. 1:05CV1504, 2006 WL 3342633, at *3 (N.D. Ohio Nov. 17, 2006)).

Smith has already asserted the argument that he did not breach the Athlete Agreement in his

answer and affirmative defenses (ECF No. 19 at PageID #: 207, ¶¶ 84-90), and he will have a full

opportunity to litigate whether he breached a valid and enforceable contract by resolution of

Count One of the Complaint (ECF No. 2).

Federal courts may dismiss a claim for declaratory judgment that is redundant of other

claims in the case because redundant claims serve no useful purpose, and "may appropriately do

so without relying on the [other] *Grand Trunk* factors." *Malibu Media, LLC v. Redacted*, 705

Fed.Appx. 402, 405-06 (6th Cir. 2017) (collecting cases). In *Malibu Media*, the Sixth Circuit

affirmed dismissal of a counterclaim for failure to state a claim under Rule 12(b)(6) when the

counterclaim allegations tracked those in the complaint and sought only a declaratory judgment

of non-infringement – the mirror image of plaintiff's claims for infringement. 705 Fed.Appx. at

406. The Court held that "[t]he heart of [the] counterclaim is whether [defendant] infringed the

copyrighted works; resolution of [the] copyright infringement claim would dispose of all factual

or legal issues necessary for deciding that counterclaim." *Id.* Although the Sixth Circuit

reviewed the motion as one under Rule 12(b)(6), it considered whether the counterclaim would

serve a "useful purpose." *See id.* (discussing the factors articulated in *Grand Trunk W. R.R. Co. v.*

*Consol. Rail Corp.*, 746 F.2d 323 (6th Cir. 1984)).

Despite Smith's protestations made during the Case Management Conference, Count One

of Smith's Counterclaims (ECF No. 19) mirrors EHPLab's affirmative claims. Therefore, Count

One of Smith's Counterclaims is dismissed pursuant to the mirror image rule. *See Breeders'*

17

(5:22CV0653)

*Cup Ltd. v. Nuvei Techs, Inc.*, No. 5:19-cv-00113-GVT, 2020 WL 1180710, at *2 (E.D. Ky.

March 11, 2020) (dismissing the defendant's declaratory judgment claim as "precisely the type of

counterclaim contemplated by the mirror image rule" because it merely attempted to negate the

plaintiff's claim that defendant breached a sponsorship agreement between the parties).

### B.

Next, Plaintiff contends equitable estoppel is not an affirmative cause of action under

Ohio law.  The Court agrees.  "Equitable estoppel precludes recovery when one party induces

another to believe certain facts exist and the other party changes his position in reasonable

reliance on those facts to his detriment."  *Ford Motor Credit Co. v. Ryan*, 189 Ohio App.3d 560,

598 (2010) (quotation marks and citations omitted).

Smith alleges that Plaintiff  "made material factual representations to Defendant Smith,

i.e., that the agreement between Smith and Plaintiff had been terminated by Plaintiff [and] that

Smith was required to sign a new, different agreement by February of 2022."  ECF No. 19 at

PageID #: 210-11, ¶ 19.  Smith further alleges that "[t]he representations made to Smith by

Plaintiff's authorized agents and representatives were . . . intentionally misleading," and "induced

actual reliance."  ECF No. 19 at PageID #: 211, ¶¶ 20-22.  Smith asks the Court to bar Plaintiff

from pursuing any contractual remedies under the Athlete Agreement.  ECF No. 19 at PageID #:

211, ¶ 24.

The Court dismisses Count Two of Smith's Counterclaims (ECF No. 19) because it fails

as a matter of law.  "[U]nder Ohio law, equitable estoppel is a defense and not an independent

cause of action."  *Nachar v. PNC Bank, N.A.*, 901 F. Supp.2d 1012, 2021 (N.D. Ohio 2012)

(5:22CV0653)

(citing *Lopardo v. Lehman Bros., Inc.*, 548 F. Supp.2d 450, 468 (N.D. Ohio 2008)). In *Lopardo*, the district court stated "[a]lthough there are a few courts that have treated this claim as a recognizable cause of action, the great majority of Ohio courts, including the Ohio Supreme Court, have recognized that equitable estoppel is a defense and not an independent cause of action." 548 F. Supp.2d at 468 (citing *Doe v. Archdiocese of Cincinnati*, 109 Ohio St.3d 491, 502 (2006) (holding that equitable estoppel is available as a shield "only in defense of a legal or equitable right or claim made in good faith," not a sword)); *see also Shepard and Assocs., Inc. v. Lokring Tech., LLC*, No. 1:20-cv-02488, 2021 WL 1061893, at *13 (N.D. Ohio March 19, 2021) (dismissing equitable estoppel claim because equitable estoppel is an affirmative defense, not a cause of action).

## C.

Finally, Plaintiff argues Smith has not pled a viable breach of contract claim in Count Three of his Counterclaims (ECF No. 19). Smith alleges that "Plaintiff's conduct as described herein constitutes a breach of the agreement(s) between Plaintiff and Defendant Smith." ECF No. 19 at PageID #: 212, ¶ 27. Smith seeks monetary relief, including attorney's fees. ECF No. 19 at PageID #: 213, ¶ 3. But, Smith does not identify any specific provision of the Athlete Agreement that Plaintiff has purportedly breached, let alone assert how the conduct of EHPLabs constitutes a breach of the Agreement.

Under Ohio law, a claim for breach of contract has four elements: (1) the existence of a contract; (2) that the plaintiff fulfilled his obligations; (3) breach by the defendant; and,

19

(5:22CV0653)

(4) damages.  *See Williams v. Richland Cnty. Children Servs.*, 861 F. Supp. 2d 874, 885 (N.D. Ohio 2011) (Pearson, J.) (citing *Telxon Corp. v. Smart Media of Delaware, Inc.*, Nos. 22098, 22099, 2005 WL 2292800, at *20 (Ohio App. 9th Dist. 2005)).  Plaintiff contends that Smith's breach of contract claim fails as a matter of law because he has not adequately alleged either Plaintiff's breach of the Athlete Agreement or his own performance.  Smith does not dispute that he has failed to allege any specific provision of the Athlete Agreement that he claims Plaintiff breached.  Instead, he cites *Melher Transport., Inc. v. Westfall Towing LLC*, No. 2:21-cv-1293, 2021 WL 3860190 (S.D. Ohio Aug. 30, 2021), and argues that the Court should deny the motion to dismiss his breach of contract claim at the pleading stage of the case because Fed. R. Civ. P. 8 requires only a short and plain statement of a party's claim.  *See* Brief in Opposition (ECF No. 24) at PageID #: 282.  Smith, however, must plead sufficient facts to raise his claim above a speculative level.  *See Twombly*, 550 U.S. at 555.

"Without pointing to a specific contract provision that [defendant] breached, [plaintiff] does not plausibly allege a claim for breach of contract."  *BCG Masonic Cleveland, LLC v. Live Nation Ent., Inc.*, 570 F. Supp.3d 552, 560 (2021) (citing *Wamen v. Goodyear Tire & Rubber Co.*, No. 5:13CV1084, 2014 WL 185901, at *3-4 (N.D. Ohio Jan. 15, 2014)).  In *Wamen*, the district court stated "[a] complaint that fails to point to a specific contract provision that has been breached falls short of setting forth a breach of contract claim."  2014 WL 185901, at *3 (citing *Northampton Rest. Group, Inc. v. FirstMerit Bank, N.A.*, 492 Fed.Appx. 518, 522 (6th Cir. 2012)).

(5:22CV0653)

In addition, Smith does not allege that he fulfilled his obligations under the Athlete

Agreement. *See* ECF No. 19 at PageID #: 212, ¶¶ 26-30. Plaintiff argues the Court should

dismiss his breach of contract claim on this basis as well. *See Bihn v. Fifth Third Mortg. Co.,*

*980 F. Supp.2d 892, 907 (S.D. Ohio 2013)* (dismissing breach of contract claim because the

plaintiff "failed to allege her own performance under the agreement").

The Court dismisses Count Three of Smith's Counterclaims (ECF No. 19) because it does

not point to any provision of the Athlete Agreement that was breached by Plaintiff and does not

allege that Smith fulfilled his obligations under the contract.

### V. Conclusion

For the foregoing reasons,

Defendants Revive MD Supplement Company, LLC, Raw Nutrition Supplement

Company, LLC, and Domenic Iacovone's Motion to Dismiss Plaintiff's Complaint (ECF No. 18)

is denied.

Plaintiff's Motion to Dismiss Counterclaims of Defendant Michael Smith (ECF No. 22)

is granted. The Court dismisses the Counterclaims (ECF No. 19).


IT IS SO ORDERED.


   August 5, 2022                     */s/ Benita Y. Pearson*
Date                                  Benita Y. Pearson
                                      United States District Judge